## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHRISTOPHER AGBAJE, D/B/A
ACE TELECOMMUNICATIONS &
CONSULTANCY SERVICES, INC.,
D/B/A ACORIN USA, LLC,

    Defendant.

Case No. 1:22-cr-00041-DMT

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION FOR JUDGMENT OF ACQUITTAL OR A NEW TRIAL

Dane DeKrey (#09524)
Bruce Ringstrom, Jr. (#08549)
Ringstrom DeKrey PLLP
814 Center Ave, Suite 5
Moorhead, MN 56560-0853
(218) 284-0484
dane@ringstromdekrey.com
bruce@ringstromdekrey.com

Mark E. Bini (*pro hac vice*)
Kaela Dahan (*pro hac vice*)
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
(212) 521-5400
mbini@reedsmith.com
kdahan@reedsmith.com

***Counsel for Defendant Christopher Agbaje***

Defendant Christopher Agbaje respectfully submits this memorandum of law in support of his motion under Rules 29 and 33 of the Federal Rules of Criminal Procedure for a judgment of acquittal or, in the alternative, a new trial on all three counts of conviction.

## PRELIMINARY STATEMENT

On May 16, 2024, a jury found Mr. Agbaje not guilty of wire fraud and mail fraud (Counts One and Two), but guilty of aiding and abetting as to those counts, and guilty of money laundering (Count Three).  The Government's case centered on an individual using the fake name "Stephen Kersey," who defrauded a North Dakota law firm of around $198,000 via a mail and fraud scheme.  The Government's case lacked any evidence that Mr. Agbaje is the fake "Stephen Kersey," knew anyone by the name of Stephen Kersey, or had any communications with someone purporting to be Stephen Kersey.  In fact, the Government admitted at trial that it still has absolutely no idea who the fake Stephen Kersey is and conceded that it's not Mr. Agbaje. The Government also presented no evidence that Mr. Agbaje intended to deprive the North Dakota law firm of money or property, let alone that he knew the money sent to the account controlled by Ome Etue came from a law firm.  Based on this factual record alone, no rational jury could have found Mr. Agbaje guilty of aiding and abetting wire fraud or mail fraud, or guilty of money

laundering, beyond a reasonable doubt.   Mr. Agbaje is therefore entitled to a judgment of acquittal on all counts of conviction.

Mr. Agbaje is also entitled to a judgment of acquittal on all counts of conviction for four additional independent reasons.

*First,* the Government's entire theory of liability on aiding and abetting wire fraud and mail fraud (Counts One and Two) wrongly assumed that Mr. Agbaje could have "walked away" from the fraud committed by the fake "Stephen Kersey."  This argument is irrational given that the fraud was completed on December 8, 2020, and the earliest opportunity Mr. Agbaje purportedly had to walk away from the fraud was in late December 2020 and January 2021, when Detective Crane first approached Mr. Etue about the fraud perpetrated against the North Dakota law firm.  No rational jury could find Mr. Agbaje guilty under an aiding and abetting theory for not "walking away" *one week after* the fraud was completed.

*Second*, the Government's evidence was insufficient to sustain a conviction for money laundering (Count Three) because the Government failed to prove beyond a reasonable doubt that Mr. Agbaje knew that the funds at issue were crime proceeds, let alone a wire fraud or mail fraud scheme to defraud the North Dakota law firm.

*Third*, the Court erroneously prevented Mr. Agbaje from cross-examining Mr. Etue, the Government's star witness, on improper coaching by the Government

which biased his testimony.   Mr. Etue offered the Government's only direct evidence of intent.   Yet the Court prohibited Mr. Agbaje from confronting Mr. Etue with audio clips from an explosive recording during which the Government improperly coached and effectively instructed Mr. Etue on how to testify to establish the elements of money laundering, and during which the Government spent several minutes going over an email that Mr. Etue had never seen (the "Book of Eli" email that was the other focus of the Government's case), telling him what it meant.

*Fourth*, the Government's rebuttal argument was based on a pre-planned demonstrative exhibit and a new money laundering theory of liability that the Government had never before revealed, and that the Government had never provided in discovery.   This sandbagging by the Government prevented Mr. Agbaje from having the chance to argue against this new money laundering theory, and effectively guaranteed his conviction on Count Three.

Alternatively, for these same reasons, the Court should at a minimum grant Mr. Agbaje's motion for a new trial.

**ARGUMENT**

## I.   Legal standard

After the jury has returned a guilty verdict, a court may "set aside the verdict and enter an acquittal."   Fed. R. Crim. P. 29(c).   A defendant is entitled to a

judgment of acquittal under Rule 29 when, after viewing the evidence in the light most favorable to the Government, no rational jury could have found all the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Cacioppo*, 460 F.3d 1012, 1021 (8th Cir. 2006). This burden is high, not insurmountable. Mere "suspicion or conjecture is not sufficient to sustain a conviction." *Johnson v. United States,* 195 F.2d 673, 676 (8th Cir. 1952) (finding circumstances proved were not inconsistent with defendant's innocence).

In addition, the Court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Because different standards govern Rule 29 and Rule 33 motions, a court may grant a Rule 33 motion even if it denies a Rule 29 motion. Rule 33 confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice. *See, e.g.*, *United States v. McMahan*, 744 F.2d 647, 652 (8th Cir. 1984) (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984)) ("As a general rule, the decision whether to grant or deny a motion for a new trial lies within the discretion of the district court."). "When considering a motion for a new trial, the district court may 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence

to sustain the verdict.'" *United States v. Dowty*, 964 F.3d 703, 708 (8th Cir. 2020)

(quoting *United States v. Amaya*, 731 F.3d 761, 764 (8th Cir. 2013)).

## II. Mr. Agbaje is entitled to a judgment of acquittal on Counts One and Two because the Government failed to sufficiently prove aiding and abetting wire fraud and mail fraud beyond a reasonable doubt.

At trial, although the jury found that Mr. Agbaje did not himself commit wire

fraud or mail fraud, the jury found Mr. Agbaje guilty of Counts One and Two under

a theory of aiding and abetting. Recognizing the weakness of their case, given that

the fake Stephen Kersey is still unknown, the Government argued in its closing

argument that Mr. Agbaje was guilty under an aiding and abetting theory because he

did not "walk away" after Detective Crane contacted Mr. Etue about the fraud

perpetrated against the North Dakota law firm in late December and early January

2022. Day 4 Tr. at 60-61 ("The defendant certainly knew about it after Detective

Crane contacted Ome Etue about the fraud perpetrated against Paul Labiner in

Florida. Because Ome Etue told the defendant; he was blind CC's the defendant in

some of that email correspondence. You can see that in exhibits 49Q and 49R.");

GX. 49Q (December 29, 2021 and following email chain from Det. Crane to Mr. Etue

regarding alleged fraud); GX. 49R (same).

The Government's rebuttal even more explicitly tied their aiding and abetting

theory to Mr. Agbaje not walking away after Det. Crane approached Mr. Etue. Day

4 Tr. 109.  The Government read the Court's aiding and abetting instruction to the jury, and then argued that  ("In paragraph 62 [the aiding and abetting instruction] it says: You may infer the defendant had the requisite advance knowledge of the wire fraud, mail fraud, or money laundering scheme and knowingly acted to aid the commission of wire fraud, mail fraud, or money laundering if you find the defendant failed to object or withdraw from actively participating in the commission of wire fraud, mail fraud, or money laundering after the defendant observed another participant complete wire fraud, mail fraud, or money laundering.  *Mr. Etue is challenged by Detective Crane that he is being, you know, engaged in some sort of fraud. Does the defendant at that point stop active participation in the fraud? No, he pushes on. That's what he tells Mr. Etue.*") (emphasis added).

But the Government's evidence that Mr. Agbaje should have "walked away" all occurred *after* the wire fraud and mail fraud had been completed on December 8, 2021.  As alleged in the Indictment, the North Dakota law firm sent a $198,500 wire to a bank account controlled by Mr. Etue at the request of the fake Stephen Kersey on December 3, 2020.  The wire fraud and mail fraud crimes were thus completed then, or, at latest, on December 8, 2020, when Mr. Etue wired $180,000 to Aller Aqua, a Denmark-based fish feed company.  Critically, though, the first time Mr. Agbaje could have "walked away" was not until late December 2020, when

Detective Crane approached Mr. Etue and asked Etue about the wires to Aller Aqua. GX 49Q (December 29, 2020); GX 49R (December 29, 2020). Indeed, that's what the Government argued in closing and rebuttal—that Mr. Agbaje failed to walk away after Detective Crane approached Mr. Etue in late December 2020 and January 2021. Day 4 Tr. at 60-61; 109.

Knowledge of the illegal act is required to convict a defendant of aiding and abetting. *See, e.g.*, *United States v. Pennington*, 168 F.3d 1060, 1064 (8th Cir. 1999). Indeed, the Court instructed the jury that to find aiding and abetting liability, the Government had to prove beyond a reasonable doubt that Mr. Agbaje "before or at the time the crime was committed" must: "(1) have known that wire fraud, mail fraud, or money laundering was being committed or going to be committed; (2) have had enough advance knowledge of the extent and character of the wire fraud, mail fraud, or money laundering that he was able to make the relevant choice to walk away from the wire fraud, mail fraud, or money laundering before all elements of the act of wire fraud, mail fraud, or money laundering were complete; and (3) have knowingly acted in some way for the purpose of causing, commanding, inducing, encouraging, or aiding the commission of wire fraud, mail fraud, or money laundering." Final Jury Charge at 31; s*ee United States v. Brownlee*, 890 F.2d 1036, 1038 (8th Cir. 1989); *United States v. Lanier*, 838 F.2d 281, 284 (8th Cir. 1988).

The Government did not present sufficient evidence that a rational jury could find any of these elements were met as to Mr. Agbaje, let alone all three, "before or at the time the crime was committed." Accordingly, the convictions for aiding and abetting Counts One and Two must be vacated.

### III. Mr. Agbaje is entitled to a judgment of acquittal on Count 3 because the Government failed to sufficiently prove money laundering beyond a reasonable doubt.

To sustain a money laundering conviction, the Government must prove that the defendant conducted a financial transaction designed to conceal the proceeds of a specified unlawful activity. *United States v. Awada*, 425 F.3d 522, 524 (8th Cir. 2005). The Government must prove beyond a reasonable doubt that: (1) the defendant knowingly conducted a financial transaction involving the proceeds of unlawful activity; (2) the defendant knew the proceeds involved in the transaction were the proceeds of an unlawful activity; and (3) the defendant intended to promote the carrying on of wire fraud or mail fraud, *or* the defendant intended to conceal or disguise the nature, location, the source, the ownership, or control of the proceeds of the specified unlawful activity. *See United States v. Dugan*, 238 F.3d 1041, 1042 (8th Cir. 2001).

Mr. Agbaje is entitled to a judgment of acquittal on Count Three because no rational trier of fact could have found that the Government proved money laundering

beyond a reasonable doubt here.  The Government did not sufficiently show that Mr. Agbaje knew the money wired from the account controlled by Mr. Etue to Aller Aqua represented the proceeds from any form of unlawful activity, or that he intended to promote wire fraud or mail fraud.  Finally, the Government provided no evidence suggesting that Mr. Agbaje intended to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the unlawful activity.  Accordingly, Mr. Agbaje is entitled to a judgment of acquittal for Count Three.

## IV.   Mr. Agbaje is entitled to a judgment of acquittal on all three counts because the court erroneously prevented Mr. Agbaje from cross-examining Mr. Etue on the Government's improper coaching.

The vast majority of the Government's case at trial was based on the testimony of its star cooperating witness, Mr. Etue, who testified, in essence, that Mr. Agbaje was the puppeteer of Mr. Etue's receipt and movement of funds stolen by the fake Stephen Kersey.  Mr. Etue's credibility is highly suspect, however. Among other things, he lied to Pretrial Services and the Government about a prior drug arrest, failed to comply with a policy at his employer Boeing requiring him to report his involvement in a federal crime, and received a Pretrial Diversion agreement and case dismissal when he was facing three counts each with a maximum sentence of 20 years in prison when the Government still couldn't rule out that he could be the fake Stephen Kersey.  Yet while Mr. Agbaje was able to establish Mr.

Etue's motivation to lie, and his demonstrated lies in the past, Mr. Agbaje was deprived of the opportunity to cross-examine Mr. Etue regarding the extraordinary coaching by the Government during his recorded witness prep sessions. Indeed, this Court prevented Mr. Agbaje from even marking the recording of the witness prep session (DX-5) as a Court exhibit so that this issue could be properly considered on appeal. Mr. Agbaje repeats that request now.[1]

The evidence Mr. Agbaje sought to admit was the Government's recording of a March 12, 2024 trial prep session with Mr. Etue. The recording showed that Mr. Etue was improperly coached on the legal elements of the charges and provided with facts that he had no independent knowledge of, told not to testify about these facts at trial given his lack of personal knowledge, but was informed of the facts so that he understood the scheme, the Government's theory of the case, and how the Government planned to apply the facts to the law. The reaction of the witness when provided with certain facts—of which he had not previously been aware—makes the prejudice clear. In determining the credibility of Mr. Etue and the veracity of his testimony, the jury should have been permitted to hear that he was improperly

---

[1] Indeed, extraordinarily, the Court not only refused to receive DX 5 as a Court exhibit so that Mr. Agbaje could renew his motion for admission of the relevant audio clips, but the Court also chastised Mr. Agbaje's counsel in open court in front of the jury for asking the Court to review the entire audio recording. Day 4 Tr. at 211-12. This was erroneous and prejudicial to Mr. Agbaje.

coached.  That coaching affected the credibility of Mr. Etue's testimony.[2]  Mr.

Agbaje sought to impeach Mr. Etue regarding this improper coaching, and establish

his bias and lack of credibility, but was prevented from doing so by the Court.

An attorney's "duty is to extract the facts from the witness, not to pour them

into him; to learn what the witness does know, not to teach him what he ought to

know."  *In re Eldridge*, 82 N.Y. 161, 171 (1880).  Respectfully, the Government's

conduct with Mr. Etue did not live up to this standard.  In preparing Mr. Etue for

trial, the Government admitted to Mr. Etue that it doesn't "necessarily know all of

the links in the chain," but has an "idea of what happened."  DX-5 at 28:30 – 29:46.

The Government then said that while the Defendant has been charged with wire

fraud, mail fraud, and money laundering, the "crux" of the case is really about

money laundering. They then coached Mr. Etue on exactly what he needed to say to

help the Government meet the elements of money laundering:

> [Mr. Agbaje] has been charged with mail fraud, wire fraud, and money
> laundering.  Money laundering is really what I think the crux of
> everything is and and I explained exactly, the elements of of what makes
> money laundering but the basic way to describe it would be this.  So you
> get you got a transaction from lawyers that was proceed to fraud, right.
> The moment it got to your account, and he asked you to wire it to Aller-
> Aqua in Denmark, that's a financial transaction.  That's the basis of
> what we call specified unlawful activity.  In this case, why the fraud mail
> fraud? Once it goes to, out of the country, if he, if he if he does that

---

[2] These statements were admissible for several reasons, including as a statement by
a party opponent, but most importantly because of their effect on the listener.

financial transaction with the intent to promote the underlying bad activity. And, or he receives it with a knowing that it's proceeds not of mail fraud or wire fraud, but proceeds of just any unlawful activity, and then he decides to conceal it, disguise the ownership, that's money laundering.

DX-5 at 29:47 – 33:30 (Court Exhibit DX-5A).

During the interview, the Government also showed Mr. Etue the Book of Eli email (GX-49H). Although Mr. Etue said that he'd never seen the email and didn't know who the "Book of Eli" was, the Government still had him read it and explained their theory. *See* DX-5 at 1:23:02 – 1:33:08. Following this interaction, Mr. Etue exclaimed "Wow" and indicated, in substance, that now he believed Mr. Agbaje had committed a crime. Id. at 1:27:30 – 1:27:40 ("Thank you guys. I mean this is … exactly what I needed[.]"). This, too, was improper coaching of a fact witness. And, perhaps more egregiously, knowing that Mr. Etue had no personal knowledge of this email or the statements contained in it, the Government disclosed in its Jencks Act material that it showed Mr. Etue the email again the day before trial.

The improper coaching continued throughout the interview. Unprompted by any question from the witness, the Government gave Mr. Etue what the Government called its money laundering "pitch":

Here's my pitch to you. OK, so there's one way he's he's Mr. Agbaje is getting money for his fish farm, and he's just pocketing it. OK, maybe that's one way. But, we've got a couple of things here in this e-mail. The sent funds of 175 five and 180,000, right? Those are our two

fraudulent wire transfers that were sent by you to Aller Aqua, right? That are our two lawyers.  180 is Solem Law 175 five is Paul Labiner. They were purchased from McBag Limited for onward payment to Aller Aqua.  So then they're talking about the mention of fraud from the American bank needs to be directed to their own client and circled back to source as all evidence of payment can be easily tracked, right? So Mr. Agbaje writes back, "Dear Dele, Mail received and acknowledged.  The transactions were legitimate in nature and we have been traders on forex transactions for various clients for a while (over 2 years).  Not only do we have an MOU with our parent company Forexcorp Bureau de change to operate and transact Forex operations here in Nigeria, we cater to various clients abroad when it comes to merchant sale transactions, to ease the pressure in sourcing forex across the board.  We are on standby and available for any inquiries."  So my OK, the way I read this is if Agbaje owns McBag.  And they're saying that they purchased the two wire transfers from them and then he comes back and says we're operating as a forex foreign exchange. Basically, he's selling the money or converting it to a different currency. He's acting like a Western Union.

DX-5 at 58:55 – 1:00:35 (Court Exhibit DX-5B).

Both of these statements to the witness were improper.  Mr. Etue is a fact witness who is cooperating with the Government.  The Government should not instruct him on facts of which he is not aware or regarding the legal elements of the crimes charged against the Defendant.  *See generally Cordova v. United States*, 2006 U.S. Dist. LEXIS 98226 (D.N.M. 2006) (sanctioning an attorney for witness coaching because 'it became impossible to know if [witness's] answers emanated from her own line of reasoning or whether she adopted [the] lawyer's reasoning from listening to his objections").

The Court's erroneous refusal to permit Mr. Agbaje to cross-examine Mr. Etue on the Government's improper coaching, and thereby allow the jury to hear key evidence that went directly to the witness's credibility, requires a judgment of acquittal on all counts of conviction or, alternatively, a new trial. *See, e.g.*, *United States v. Young*, 2005 U.S. App. Dist. LEXIS 10929, *2–3 (9th Cir. 2005) (granting defendant's motion for a new trial and finding that the trial court abused its discretion by excluding expert testimony about allegedly "improper techniques" used by interviewers; finding that the "erroneous evidentiary ruling more likely than not affected the verdict" because it prevented the defendant from introducing evidence to support his defense – "that the children were repeating a story that had been suggested through the use of improper interviewing techniques"); *United States v. Zacarias Moussaoui*, No. 01-455 (E.D. Va. Mar. 13, 2006) (precluding the Government from introducing aviation-related evidence, including testimony from the witnesses and exhibits, due to improper witness coaching); *see also Barksdale Sch. Portraits, LLC v. Williams,* 339 F.R.D. 341, 346 (D. Mass. 2021) (permitting plaintiffs to play at trial recordings of defense counsel's improper coaching of a witness "as it will allow the jury to assess [the witness'] credibility" and disqualifying defense counsel so as not to "suggest a modicum of tolerance for [defense counsel]'s conduct where there is none").

**V.    Mr. Agbaje is entitled to a judgment of acquittal on Count Three because the Government improperly sandbagged Mr. Agbaje by introducing a new demonstrative exhibit and a new money laundering theory in rebuttal.**

Mr. Agbaje is also entitled to a judgment of acquittal on Count Three because the Government's closing rebuttal argument was based on a demonstrative exhibit and a new money laundering theory that the Government had never before revealed and that the Government *had not* provided in discovery.  *See* Fed. R. Crim. P. 16(E)(i) (requiring the Government to produce in discovery items that are "material to preparing the defense.").  Indeed, during rebuttal, the Government stood up and showed to the jury a new demonstrative exhibit, never provided in discovery, which introduced an entirely new theory of money laundering. Nor was the demonstrative created in the moment by the Government in response to Mr. Agbaje's closing argument. Instead, it was created before closing arguments, in much the same vein as the demonstrative provided to Mr. Agbaje before trial. It makes no sense—other than as an attempt to backdoor the exhibit in—for the Government to produce one demonstrative but not another. This is particularly egregious when it only appeared for the first time during the Government's rebuttal, when they knew that Mr. Agbaje would not have an opportunity to address or rebut the contents of the demonstrative.

The same is true about the general money laundering argument made by the Government in concert with the demonstrative. The argument related to a company

called McBag Limited and how Mr. Agbaje's ownership of the company equated to his participation in money laundering. But much like the demonstrative, this argument was not made or developed during trial. Instead, the Government once again waited to offer this argument for the first time on rebuttal, again to prevent Mr. Agbaje from addressing or rebutting it. Once is perhaps an accident; twice is not.

Together, this two-pronged sandbagging by the Government prevented Mr. Agbaje from having the chance to argue against this new money laundering theory, and effectively guaranteed his conviction on Count Three. Count Three should therefore be dismissed. *See, e.g.*, *United States v. Cordry*, 2020 U.S. Dist. LEXIS 130458, *60–63 (D. Kan. July 22, 2020) (granting defendant's motion for a new trial because the prosecution introduced a new theory on rebuttal, which was "the final word the jury heard from the parties," and "deprived the defendant of a fair trial"); *see also United States v. Gleason*, 616 F.2d 2 (2d. Cir. 1979) (stating that "had no action been taken by the court after the Government's reply summation, a reversal [of defendant's conviction] might be required"; noting that the district court judge had offered defense counsel a surreply because of the "eleventh-hour unfairness" of the Government's rebuttal).

Indeed, Fed. R. Crim. P. 29.1 governs closing arguments.  In noting that Government sandbagging in rebuttal is not permitted, the *Gleason* court looked to the House Judiciary Committee's report regarding the proposed rule:

> The Committee believes that . . . fair and effective administration of justice is best served if the defendant knows the arguments actually made by the prosecution on behalf of conviction before the defendant is faced with the decision whether to reply and what to reply.

616 F.2d at 26 n.16 (citing 1975 House Judiciary Committee Report regarding proposed Fed. R. Crim. P. 29.1 (H.R.Rep. No. 94-247)).

This highlights the wrongful nature of the Government's rebuttal.  Accordingly, Mr. Agbaje should be granted a judgment of acquittal as to Count Three.

## VI.   Alternatively, Mr. Agbaje is entitled to a new trial.

For all the same reasons, the Court should exercise its broad discretion and grant Mr. Agbaje a new trial under Rule 33.  The insufficient proof and legal errors identified above, both individually and in combination, leave a real concern that an innocent person has been convicted.  To avoid a gross miscarriage of justice, a new trial on the counts of conviction should be granted if the Court denies Mr. Agbaje's motion for judgment of acquittal.

\*      \*      \*

## CONCLUSION

For all these reasons, the Court should grant judgments of acquittal on all counts of conviction or, alternatively, order a new trial on the aiding and abetting of Counts One and Two, and as to Count Three.[3]

Dated: May 30, 2024

/s/ Dane DeKrey
Dane DeKrey (#09524)
Bruce Ringstrom, Jr. (#08549)
Ringstrom DeKrey PLLP
814 Center Ave, Suite 5
Moorhead, MN 56560-0853
(218) 284-0484
dane@ringstromdekrey.com
bruce@ringstromdekrey.com

/s/ Mark E. Bini
Mark E. Bini (*pro hac vice*)
Kaela Dahan (*pro hac vice*)
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5400
mbini@reedsmith.com
kdahan@reedsmith.com

***Counsel for Defendant Christopher Agbaje***

---

[3] Mr. Agbaje respectfully asks for leave of the Court to file a reply following the Government's opposition to this motion.