# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2944

_____

United States of America

*Plaintiff - Appellee*

v.

Christopher Agbaje, doing business as Ace Telecommunications & Consultancy Services, Inc., doing business as Acorin USA, LLC

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Western

_____

Submitted: May 16, 2025
Filed: May 13, 2026
[Published]

_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.

_____

PER CURIAM.

A jury convicted Christopher Agbaje of money laundering and of aiding and abetting mail fraud and wire fraud. At trial, Agbaje unsuccessfully moved to admit certain statements made during the government's witness preparation of Ome Etue, Agbaje's alleged accomplice and — as the government acknowledges — "an important witness in the United States' case." Agbaje appeals several aspects of his

Appellate Case: 24-2944   Page: 1   Date Filed: 05/13/2026 Entry ID: 5639521

conviction and sentence, including the sufficiency of the evidence and the district court's decision to exclude the statements from Etue's preparation as irrelevant. As to the statements, Agbaje argues they were relevant to Etue's bias and credibility. We agree, and because the error was not harmless, we reverse and remand for a new trial.

## I. Background

In November 2020, an imposter posing as "Stephen Kersey" emailed a North Dakota law firm requesting representation in a dispute with a Bismarck, North Dakota, company over an unpaid debt. The imposter then informed the law firm that the Bismarck company had agreed to pay the debt directly to the firm. Shortly after, the law firm received a fraudulent $198,850 check purportedly from the Bismarck company. The imposter told the law firm to deposit the check, deduct its fees, and wire the remainder based on account information that would be provided. The law firm later wired $198,336.68 to an account that Etue had opened in the name of "Ace Telecommunications and Consultancy SER." Etue then wired $180,000 from that account to a Danish account in the name of "Aller Aqua," which was purportedly a Danish fish feed company with a Nigerian subsidiary. In January 2021, Agbaje received an email from "appointed Forex Changers for Aller Aqua Nigeria," confirming that they had purchased "funds of [$]175,500 and [$]180,000 . . . from McBag Limited for onward payment to Aller Aqua Denmark."[1] Agbaje resided in Nigeria and owned McBag Limited.

The government charged Etue with mail fraud, wire fraud, and money laundering in August 2021. He agreed to cooperate and later testified at Agbaje's trial. There, Etue testified that Agbaje was a longtime friend with several business

---

[1]The government presented evidence of a similar scheme in November 2020 that involved a Florida law firm. The Stephen Kersey imposter directed the Florida law firm to wire $195,500 to an account opened by Etue in the name of "Acorin USA LLC." Etue then wired $175,500 from that account to the Danish Aller Aqua account.

Appellate Case: 24-2944    Page: 2    Date Filed: 05/13/2026 Entry ID: 5639521

ventures in Nigeria, including a fish farm and a telecommunications company called Acorin Limited. According to Etue, he entered a business partnership with Agbaje, who directed him to register two companies in the United States: "Ace Telecommunications and Consultancy Services LLC" and "Acorin USA LLC." Etue opened a bank account for each entity, and Agbaje told Etue he would receive money in those accounts from lawyers who were investing in Agbaje's fish farm. As Etue explained, he wired the $180,000 from the Ace Telecommunications account to the Danish Aller Aqua account at Agbaje's direction, believing it was payment for fish feed. Even though Etue was facing up to 60 years of imprisonment, his cooperation resulted in a pretrial diversion agreement under which the government dismissed all the charges against him after he completed 12 months of probation.

Before trial, the prosecutor met with Etue for a preparation session, which was recorded. During the session, the prosecutor stated, "Here's my pitch to you," before explaining his theory of how Agbaje had used Etue to commit money laundering and asking if Etue had further information supporting that theory. A little later, Etue indignantly remarked,

> For him to put me through this, and again, I'm happy that you guys believe me, okay, gave me this opportunity to actually now prove that, yes, this idiot needs to be caught. . . . I've been holding onto this for two and a half years. I had to call some people, sit down with me, I'm like, "Here's what [Agbaje] did to me." And the thought was, "Oh my god!"

The prosecutor then read an email Agbaje sent in November 2021 to an unknown recipient. In this email, Agbaje requested a contact who could provide a law firm or escrow account to receive and legitimize funds that had been paid to another of Agbaje's contacts for illegitimate transactions. When Etue heard Agbaje's reference to illegitimate transactions, he exclaimed, "Wow, wow, wow! Are you serious?" After reading the email, the prosecutor explained how he thought the email related to the North Dakota fraud scheme. Etue responded, "Are you kidding me? Are you? Oh-haha-oh wow, this is mind blowing!" He also added that he was going to provide

-3-

some of his Whatsapp conversations with Agbaje, saying "please share them with [the prosecutor] and the team.  Oh my god!"  The prosecutor then told Etue, "The way this [email] reads to me is that [Agbaje] has knowledge of the scheme, right?"  And Etue replied, "Ooh!  Mind blowing. . . .  Thank you guys.  I mean this is exactly what I needed, right?"

During the cross-examination of Etue at Agbaje's trial, Agbaje sought to admit several statements from this exchange to show that the government had "essentially coach[ed] and shap[ed] the witness's testimony . . . ."  Unconvinced that the preparation session influenced Etue's trial testimony, the district court stated, "I find that the statements are not relevant[,] and they will not be allowed."  Defense counsel then moved to admit the full interview as an exhibit and filed a letter overnight to request reconsideration.  In the letter, counsel argued the preparation session statements were relevant to Etue's credibility and showed improper witness coaching.  The next morning, the district court concluded that the government's preparation of Etue was not improper, so it declined to reconsider its ruling.  The jury ultimately acquitted Agbaje of mail and wire fraud but convicted him of aiding and abetting the same.  When Agbaje moved for a new trial, the district court again concluded that "any inquiry into the government's preparation with Mr. Etue was properly excluded at trial."

## II.  Analysis

"We review the district court's decision to exclude evidence for an abuse of discretion."  *United States v. Hardin*, 889 F.3d 945, 948 (8th Cir. 2018) (quoting *United States v. Counce*, 445 F.3d 1016, 1018 (8th Cir. 2006)).  "A district court's evidentiary rulings are subject to harmless error analysis under Federal Rule of Criminal Procedure 52(a)."  *United States v. Garrett*, 103 F.4th 490, 496 (8th Cir. 2024) (cleaned up).  "An evidentiary error is harmless if the substantial rights of the defendant were unaffected and the error did not influence or had only a slight influence on the verdict."  *United States v. Davis*, 859 F.3d 592, 597 (8th Cir. 2017) (quoting *United States v. Peneaux*, 432 F.3d 882, 894 (8th Cir. 2005)); *see also*

*United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004) ("To affect substantial rights, an error must have substantial and injurious effect or influence in determining the verdict." (cleaned up)). "The government bears the burden of proving an error is harmless." *Davis*, 859 F.3d at 597.

"[E]vidence tending to show a substantial reason for bias or interest in an important witness is never collateral or irrelevant." *United States v. Peltier*, 585 F.2d 314, 332 (8th Cir. 1978) (quoting *Barnard v. United States*, 342 F.2d 309, 317 (9th Cir. 1965)). As a result, bias may be proven by extrinsic evidence. *Johnson v. Brewer*, 521 F.2d 556, 561–62, 562 n.13 (8th Cir. 1975). And "[b]ecause impeachment evidence is not offered for the truth of the matter asserted, it is not hearsay." *Limbeya v. Holder*, 764 F.3d 894, 898 (8th Cir. 2014) (citing Fed. R. Evid. 801(c)). This means "[e]vidence showing a witness's bias is almost always admissible." *United States v. Chambers*, 133 F.4th 812, 816 (8th Cir. 2025) (quoting *United States v. Harris*, 956 F.2d 177, 181 (8th Cir. 1992)).

Etue's statements during the preparation session were admissible and highly probative of Etue's bias toward the government and against Agbaje. Under the government's theory, Agbaje used Etue as an unwitting pawn in his fraudulent scheme, and Etue's statements support an inference that he was shocked by that possibility. In explaining its theory and interpreting evidence that Etue had not seen before, the government provided Etue with a clear path to exonerate himself by blaming Agbaje in a manner consistent with the government's theory. Etue's statements also imply his realization that Agbaje used him, supplying a motive for Etue to turn the tables by testifying for the government. The statements went beyond implying Etue's generalized bias from his extraordinarily favorable cooperation agreement. Rather, they would have given teeth to the implication of bias by revealing Etue's view that the government had given him "exactly what [he] needed" to help prove that Agbaje — the "idiot" who had "put [him] through this" — was the one who "need[ed] to be caught."

Appellate Case: 24-2944    Page: 5    Date Filed: 05/13/2026 Entry ID: 5639521

The district court did not admit the statements because it did not view the government's preparation of Etue as ethically improper. *See Geders v. United States*, 425 U.S. 80, 90 n.3 (1976) ("An attorney must respect the important ethical distinction between discussing testimony and seeking improperly to influence it."). But the ethical propriety of the preparation session is beside the point here, and we express no view on the issue other than to observe its irrelevance to the question of admissibility. Regardless of its propriety, the government's exchange with Etue was admissible as extrinsic evidence, *Johnson*, 521 F.2d at 562 & n.13, because it was probative of Etue's bias and "[t]he partiality of a witness . . . is 'always relevant . . . .'" *Id.* at 561 (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)).[2]

Moreover, excluding the statements was not harmless. While the government introduced other documentary evidence tending to show Agbaje's guilt, Etue's testimony provided an important link between Agbaje and the North Dakota fraud scheme. As Agbaje's alleged accomplice, Etue testified that Agbaje told him to expect the wire transfer from the North Dakota law firm and to send most of the money to the Danish Aller Aqua account. The split verdict on the mail and wire fraud counts — acquitting Agbaje of the substantive offenses but convicting him of aiding and abetting — suggests the jury relied on Etue's testimony to infer Agbaje was involved in the North Dakota fraud scheme because he knew the origin of the

---

[2]Agbaje also argues the district court violated the Confrontation Clause by prohibiting cross-examination about Etue's preparation session statements because it viewed the preparation as proper. Agbaje never explicitly raised a Confrontation Clause objection before the district court, and we need not consider this issue because we conclude the statements were admissible and their exclusion was not harmless. Because we are remanding, however, we observe that regardless of its propriety, the government's preparation — and alleged coaching — of Etue "is a proper subject of impeachment in cross-examination." *United States v. Carrillo*, 16 F.3d 1046, 1050 (9th Cir. 1994) (citing *Geders*, 425 U.S. at 88–90); *see, e.g.*, *United States v. Murdock*, 928 F.2d 293, 298 (8th Cir. 1991); *United States v. Clayton*, 787 F.3d 929, 934 (8th Cir. 2015) (citing *United States v. Nambo-Barajas*, 338 F.3d 956, 962–63 (8th Cir. 2003)).

funds received by Etue.[3]  If anything, the jury may have been left with a favorable impression of Etue's credibility because any motive to lie would have favored Agbaje, his close friend, rather than the government.  Since Etue's testimony and credibility were key to proving the government's case, we cannot say "with fair assurance" that excluding highly probative evidence of Etue's bias had no more than a slight influence on the verdict.  *Kotteakos v. United States*, 328 U.S. 750, 765 (1946).

### III. Conclusion

Thus, we reverse Agbaje's convictions and remand for a new trial.

_____

---

[3]For the same reason, we conclude that the evidence presented was sufficient for a reasonable jury to find Agbaje guilty beyond a reasonable doubt of aiding and abetting mail and wire fraud.  *See United States v. Has No Horse*, 11 F.3d 104, 106 (8th Cir. 1993) ("We address this issue only because, if the evidence [were] not sufficient to establish guilt beyond a reasonable doubt, we would reverse the conviction and would not remand the case for a new trial.").