**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| United States of America, Plaintiff, | ) | **ORDER** |
| vs. | ) | Case No. 1:22:cr-041 |
| Christopher Agbaje, Defendant. | ) | |

Defendant is a Nigerian national charged in a three-count Indictment with: (1) wire fraud or, alternatively, aiding and abetting wire fraud in violation of 18 U.S.C. §§1343 and 2 (Count One); (2) mail fraud or, alternatively, aiding and abetting mail fraud in violation of 18 U.S.C. §§ 1341 and 2 (Count Two); and (3) money laundering or, alternatively, aiding and abetting money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 2 (Count Three). (Doc. No. 2). He was extradited to the United States from the United Kingdom of Great Britain and Northern Ireland ("UK"). He made his initial appearance before the undersigned and was arraigned on February 12, 2024. (Doc. No. 10). Immediately following his arraignment, he waived in open court his right to a detention hearing and was ordered detained by the undersigned pending trial. (Doc. No. 12).

On February 23, 2024, Defendant filed a Motion for Release from Custody and request for a hearing. (Doc. Nos. 17 and 19). On February 26, 2024, the United States filed a response in opposition to the motion. (Doc. No. 20). On March 7, 2024, the undersigned convened a hearing on Defendant's motion. (Doc. No. 26). Following the hearing, finding that the United States had demonstrated by a preponderance of the evidence that there were no conditions available that will

reasonably ensure Defendant's appearance at future proceedings, the undersigned issued an order denying Defendant's motion. (Doc. No. 28).

This matter proceeded to trial on May 13, 2024. (Doc. No. 78). During trial the court denied Defendant's motion to admit statements made by a witness, Ome Etue, in emails he had exchanged with the United States prior to trial.

At the conclusion of the trial the jury returned guilty verdicts to the offenses of aiding and abetting wire fraud as charged in Counts One and two of the Indictment, and a guilty verdict to the charge of money laundering as charged in Three of the Indictment. (Doc. No. 75). On September 12, 2024, the court sentenced to a total term of imprisonment of 142 months. (Doc. No. 99).

Defendant appealed his convictions, asserting, inter alia, that the court had erred when excluding statements made by Omer Etue prior to trial to the United States via email. (Doc. No. 102). The Eighth Circuit agreed with Defendant and on May 13, 2026, reversed Defendant's convictions and remanded this matter for a new trial. (Doc. No. 118). A formal mandate was issued on June 5, 2026. (Doc. No. 119). Trial in this matter is currently scheduled for October 20, 2026. (Doc. No. 121).

On July 9, 2026, Defendant filed a Motion for Release from Custody. (Doc. No. 125). On July 29, 2026, the court convened a hearing on Defendant's motion. At the hearing, the United States took the position that Defendant's risk of flight is heightened given the outcome of his last trial. It further asserted that the weight of the evidence against Defendant and Defendant's lack of ties to the District of North Dakota continued to weigh in favor of detention. In response, Defendant asserted that the weight of the evidence has diminished in light of the Eighth Circuit's reversal of his conviction and remand for a new trial and, when factoring in good time and First Step Act credit,

Defendant has ostensibly served the entire sentence recommended by the United States at his sentencing. Finally, he averred that his risk of flight is further mitigated by the fact that his counsel is willing to house him and Richard Henderson, a former Assistant Federal Public Defender for the District of North Dakota, is willing to serve as his third-party custodian.

The Bail Reform Act, 18 U.S.C. § § 3141–3150, authorizes and sets forth the procedures for the court to order the release or detention of a defendant pending trial, sentence, and appeal. Under the Act, a defendant is ordinarily entitled to pretrial release, with or without conditions, "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b), (c), and (e). Subsection (g) of § 3142 sets forth the general factors that a court must consider "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community ...." These factors include the nature and circumstances of the charged offense, the weight of the evidence, the history and characteristics of the person, and the nature and seriousness of the danger posed by the person to the community upon release. 18 U.S.C. § 3142(g). The same considerations apply to a defendant's release or detention following remand. See United States v. Slatten, 286 F.Supp.3d 61, 63-64 (D.D.C. 2017) (denying the defendant's release pending trial on remand after the Court of Appeals for the D.C. Circuit vacated the defendant's conviction on the basis that the district court should have allowed the defendant to present co-defendant statements).

Whether Defendant has effectively served the entirety of the sentence previously recommended by the United States remains an open (and disputed) question and does not factor into the court decision regarding the issue now before the court. Having again considered the § 3142(g)

factors, the court finds that they continue to weigh in favor of detention. As the court noted when denying Defendant's previous motion for release, Defendant has no meaningful legal, personal, or financial ties to this district, has strong ties to a foreign county, and lacks verifiable legitimate employment. Defendant's proposal–release to the defense counsel's residence does not adequately mitigate Defendant's risk of flight.

As the court noted at the hearing on Defendant's motion, it has concerns about Defendant's proposed residence. First, the court lacks verification regarding the number of children and adults currently occupying the residence.[1] Second, the court lacks information as to whether all of the adult occupying the residence work outside the home. Thus, it is unknown at present how long and how often Defendant would be left alone at the proposed residence without any direct supervision. The court appreciates Mr. Henderson's willingness to serve as Defendant's custodian. However, it does not appear that Mr. Henderson would be residing at the proposed residence or otherwise be in a position to directly supervise Defendant as he appears to reside a modest distance from the proposed residence.[2]

In sum, the court is not persuaded the release of Defendant to counsel's residence (or any private residence for that matter) will provide the level of security and supervision required under the circumstances as there remain strong incentives for Defendant to flee. Consequently, the court

---

[1] It is also unverified at present whether all of the occupants of the residence appreciate that, when deciding to release a defendant pending trial, there is a wide range of release conditions available to the court. Available conditions for the court's consideration include restrictions on Internet access, the monitoring and search of computers owned by or accessible to a defendant, and the requirement that a defendant submit to a search of his residence by Pretrial Services Officers upon their request.

[2] Although not overtly expressed during the course of the hearing, the court also believes that the release of Defendant to his attorney's residence arguably blurs professional boundaries and raises practical concerns that are not necessarily blunted by Mr. Henderson's willingness to serve as Defendant's third-party custodian. For example, if Defendant were at some point accused of violating his release conditions, counsel's residence could become a search location or counsel could be called as a witness.

is disinclined to release Defendant to counsel's residence pending retrial. However, the court would consider the placement of Defendant at a residential reentry center as it would provide the heightened level of security and supervision required under the circumstances.

Accordingly, Defendant's Motion for Release from Custody (Doc. No. 125) is **DENIED**. Defendant shall be placed on the waiting list for residential reentry placement and given priority consideration once space at a residential reentry facility becomes available. However, Defendant should appreciate that priority consideration is not a guarantee of an expedited placement as there may be others already on the waiting list that may be equally or more deserving of a placement when space becomes available.

**IT IS SO ORDERED.**

Dated this 30th day of July, 2026.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court